UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| XIAOBING LIU *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANTONY J. BLINKEN *et al.*, <br><br> *Defendants*. | Civil Action No. 21-629 (TJK) |

## MEMORANDUM OPINION

Plaintiffs, a group of Chinese citizens seeking to immigrate to the United States through the EB-5 Immigrant Investor Program, sue the Secretary of State, the State Department, and a series of unnamed government officials, alleging that Defendants are unlawfully refusing to schedule their visa interviews and delaying the adjudication of their applications. Plaintiffs also seek preliminary injunctive relief, noting that the potential expiration of the EB-5 Regional Center Program means that, unless their visa applications are adjudicated promptly, they could lose their opportunity to immigrate under the program altogether. Defendants oppose the motion and have moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim, or in the alternative, for summary judgment. For the reasons explained below, the Court will grant Defendants' motion to dismiss and deny Plaintiffs' motion for a preliminary injunction because they have not shown a likelihood of success on the merits.

**I.  Background**

    **A.**    **The EB-5 Program and Regional Center Program**

Congress created the EB-5 Immigrant Investor Program when it passed the Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989. The program allocates

visas—in a number not to exceed 7.1 percent of all visas—to aliens "seeking to enter the United States for the purpose of engaging in a new commercial enterprise." 8 U.S.C. § 1153(b)(5)(A). To be eligible for the program during the timeframe relevant to this lawsuit, an alien must have invested $1,000,000 in an enterprise, or $500,000 in a "targeted employment area." *Id.* § 1153(b)(5)(C). Congress later established the Regional Center Pilot Program which relaxed certain EB-5 requirements for investments made through a geographic-based Regional Center. *See* Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874. Congress has reauthorized the program more than twenty times since its inception and removed the "pilot" designation in 2012. *See* Pub. L. No. 112-176 § 1, 126 Stat. 1325 (Sept. 28, 2012). The Regional Center Program's latest expiration date is June 30, 2021.

To obtain lawful permanent resident status through the EB-5 program, an alien investor must file a Form I-526 petition with the United States Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security. 8 C.F.R. §§ 204.6(a), (c). If USCIS determines that the alien investor meets the EB-5 requirements, it will approve the petition. *See Nohria v. Renaud*, No. 20-cv-2085 (BAH), 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021) (describing I-526 process). With an approved I-526 petition in hand, the alien becomes an "employment-based immigrant" under the EB-5 statute. 8 U.S.C. § 1154(a)(1)(H). An approved I-526 petition "makes a petitioner eligible for a visa, but does not automatically provide a visa." *Nohria*, 2021 WL 950511, at *2. The immigrant, if outside the United States, must still apply for and obtain an immigrant visa from the State Department at a consular post abroad. *See* 84 Fed. Reg. 35,750, 35,756–57 (July 24, 2019) (describing EB-5 visa process); 22 C.F.R. § 42.61(a). The State Department processes the application at its National Visa Center and ensures that the applicant meets all prerequisites for visa adjudication. *Nohria*, 2021 WL

950511, at *2; 84 Fed. Reg. at 35,756.  If the Center finds that an applicant is "documentarily qualified," then it forwards the application package to the consulate, which schedules a visa interview.  *See* 84 Fed. Reg. at 35,756.  After the interview, a consular officer must either grant, deny, or discontinue the visa application.  *See* 22 C.F.R. § 42.81(a).

  **B.**  **Plaintiffs' EB-5 Investments and Visa Applications**

  According to the Amended Complaint, Plaintiffs are a group of thirty-eight Chinese citizens seeking to immigrate into the United States.  ECF No. 27 ("Am. Compl.") ¶ 7.  Plaintiffs each invested the requisite amount for participation in the EB-5 program and the USCIS has approved each investor's Form I-526 petition.  *Id.* ¶ 15.  Their applications became documentarily complete between December 2019 and May 2021, and they are now at various stages of processing at the U.S. Consulate General in Guangzhou, China.  *Id.* ¶ 9, 16–53.  Most Plaintiffs are awaiting visa interviews, one of the final steps in the visa process.  *Id*.

  While Plaintiffs' visa applications were pending, the COVID-19 pandemic hit.  On January 31, 2020, former President Donald Trump issued Presidential Proclamation 9984 ("the Proclamation") suspending the entry of individuals from China into the United States.  *See* Proclamation No. 9984, 85 Fed. Reg. 6,709.  The Proclamation exempted "any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their designees."  85 Fed. Reg. at 6711.  Soon after, in March 2020, the Secretary of State "suspended all routine visa services," providing only "emergency" and "mission critical" services.  Am. Compl. ¶¶ 10, 58.  In July 2020, the Secretary of State announced that the State Department would also "begin providing additional services, culminating eventually in a complete resumption of routine visa services."  Am. Compl. ¶ 10.  Plaintiffs allege that the U.S. Consulates in China issued no EB-5 visas between March 20, 2020,

and the filing of this suit in March 2021. *Id.* They suggest that this suspension was based on Defendants' interpretation of the Proclamation. Am. Compl. ¶¶ 71.

Since Plaintiffs sued, though, on April 8, 2021, the Secretary of State determined that the travel of immigrants and others is in the national interest for purposes of the national interest exception under Presidential Proclamation 9984.[1] Because EB-5 visas are immigrant visas, this determination applies to Plaintiffs' visa applications. The scheduling of the backlog of visa interviews is now proceeding subject to a scheme that prioritizes certain types of immigrant visas, particularly those related to family reunification.[2] EB-5 visas fall into the last category for prioritization, "tier four," but the State Department's plan "instructs posts to schedule and adjudicate some cases in Tier Three and Tier Four each month." *Id.*

Plaintiffs filed this suit against the Secretary of State, the State Department, and a series of unnamed government officials ("Defendants") on March 9, 2021, *see* ECF No. 1, and moved for a preliminary injunction a month later, *see* ECF No. 10. They seek an injunction preventing Defendants from implementing or enforcing Presidential Proclamation 9984 against them and requiring Defendants to immediately "re-initiate" processing of their visas. ECF No. 10 at 23. After some difficulty effecting proper service, Plaintiffs served Defendants on May 18. ECF No.

---

[1] *See* U.S. Dep't of State, Bureau of Consular Affairs, *Updates to National Interest Exceptions for Regional COVID Proclamations* (Apr. 8, 2021), https://travel.state.gov/content/travel /en/News/visasnews/ updates-to-national-interest-exceptions-for-regional-covid proclamations. html. The "Court may take judicial notice of Executive Branch statements and reports pursuant to Federal Rule of Evidence 201," *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 24 n.6 (D.D.C. 2018), which authorizes a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b).

[2] *See* U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Prioritization* (Apr. 30, 2021), https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-prioritization. html.

20.  In response, Defendants moved to dismiss, or in the alternative, for summary judgment. ECF No. 23.  On June 3, Plaintiffs also amended their complaint to remove three applicants Defendants identified as having received their visas.  ECF No. 24.  On June 11, the Court held a hearing on the motion for a preliminary injunction.[3]

## II.  Legal Standards

### A.  Motion for Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20.  The last two factors merge where plaintiffs seek preliminary relief against the government.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Before *Winter*, these factors were "evaluated on a 'sliding scale'" so that "an unusually strong showing on one of the factors" could make up for a weaker showing on another.  *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009) (quoting *Davenport v. Int'l Brotherhood of Teamsters*, 166 F.3d 356, 361 (D.C. Cir. 1999)).  That said, the D.C. Circuit "has suggested, without deciding, that *Winter* should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring plaintiffs to independently demonstrate both a likelihood of success on the merits and irreparable harm."  *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 205

---

[3] At the hearing, the parties confirmed that three more Plaintiffs, Shuguang Xin, Xiaoyang Lyu, and Xinwu Sun, were issued visas since the filing of the Amended Complaint.  Thus, the parties agree, their claims are moot.  *See Dvorak v. Dep't of Homeland Sec.*, No. 18-cv-1941 (DLF), 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (dismissing action as moot because "plaintiffs have received the relief they requested: final action on their pending visa applications").

F. Supp. 3d 4, 26 (D.D.C. 2016) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). Thus, "without a likelihood of success on the merits, Plaintiffs are not entitled to a preliminary injunction regardless of their showing on the other factors." *Brown v. FEC*, 386 F. Supp. 3d 16, 24 (D.D.C. 2019) (citing *Ark. Dairy Coop Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009).

### B.   Motions to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). As federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F.Supp.2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In reviewing such a motion, while the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings, the Court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253–55 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts

6

alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).  But a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "While a court generally does not consider matters beyond the pleadings for a motion to dismiss, it may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Feng Wang v. Pompeo*, No. 18-cv-1732 (TSC), 2020 WL 1451598, at *3 (D.D.C. Mar. 25, 2020) (citation omitted).  A court may also consider matters of which it can take judicial notice.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 (D.C. Cir. 1997).

### III.   Analysis

"Because Plaintiffs can only establish a likelihood of success on the merits of their [claims if those claims survive] the motion to dismiss, and their entitlement to a preliminary injunction hinges on defeating that motion, the Court addresses it first." *Citizens for Resp. and Ethics in Wash. (CREW) v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 44 (D.D.C. 2019).  The Amended Complaint asserts two counts.  First, Plaintiffs allege that Defendants' application of Presidential Proclamation 9984 to suspend the processing of their visas is arbitrary and capricious, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2).  Am. Compl. ¶¶ 65–72.  Second, they allege Defendants have unreasonably delayed adjudication of their applications under the APA, 5 U.S.C. § 555(b).  Am. Compl. ¶¶ 73–74.  The Court will grant Defendants' motion to dismiss Count I for lack of subject-matter jurisdiction and Count II

for failure to state a claim. Thus, the Court will also deny Plaintiffs' motion for a preliminary injunction.

        **A.**        **Count I – Application of Presidential Proclamation 9984**

The Court must begin its consideration of Plaintiffs' first claim—their challenge to the application of Presidential Proclamation 9984 to them—by determining whether it has subject matter jurisdiction over it. "Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *United Broth. of Carpenters and Joiners of Am., AFL–CIO v. Operative Plasterers' & Cement Masons' Int'l. Ass'n of the U.S. & Canada, AFL–CIO*, 721 F.3d 678, 687 (D.C. Cir. 2013). "If events outrun the controversy such that the court can grant no meaningful relief; the case must be dismissed as moot." *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

The Court holds that Plaintiffs' challenge to Defendants' application of the Presidential Proclamation 9984 to them is now moot. Plaintiffs allege that "implementation of Proclamation 9984" to "suspend[] the issuance of visas . . . is in excess of [the State Department's] authority." Am. Compl. ¶ 71. For that reason, they ask the Court to order Defendants to "resume the issuance and reissuance of EB-5 visas, and resume adjudication of all EB-5 visa applications, to Plaintiffs with due priority and expediency." *Id.* ¶ 72. But the Secretary of State's determination in April 2021 that immigrant visa applicants are subject to the national interest exception means that the Proclamation is no longer operating to suspend the processing of their visa applications. In other words, there is no actual, ongoing controversy over the effect of the Proclamation on their applications.

Plaintiffs argue that the Secretary of State's determination does not moot their claims. They suggest that as a technical matter, the Proclamation is still being unlawfully applied to

8

them, the Secretary's decision to except them notwithstanding. *See* ECF No. 26 at 5. This distinction makes no difference. To repeat, Defendants are no longer applying the Proclamation to suspend processing of Plaintiffs' visa applications. There is thus no live controversy over Defendants' authority to do so. In pursuing these claims, Plaintiffs are at this point effectively asking the Court to render an advisory opinion about the hypothetical effect of the Proclamation, which it may not do. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[Courts'] judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").

Plaintiffs try to save these claims by raising the specter of the Secretary of State reversing course and applying the Proclamation to them in the future. To be sure, "[a]s a general rule, a defendant's voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case." *See Cierco v. Mnuchin*, 857 F.3d 407, 414–15 (D.C. Cir. 2017). Voluntary cessation will only moot a claim if "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). As for the first prong, this Court and other Circuits have "consistently recognized that where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior." *Citizens for Resp. and Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 61–62 (D.D.C. 2012). And there is no reasonable expectation that the State Department will reverse its determination that Plaintiffs qualify for the national interest exception. In fact, counsel for Defendants noted that the State

Department has been expanding—not reducing—those covered by the national interest exception.[4] And as for the second prong, the Secretary of State's determination has eradicated the effect of the Proclamation on Plaintiffs because it is no longer being applied to them. Indeed, Plaintiffs have received all the relief they requested relating to the Proclamation, and as noted above, several Plaintiffs have had their visas processed since this suit was filed.[5]

### B. Count II - Unreasonable Delay

Plaintiffs' remaining claim is for unreasonable delay under the APA. *See* Am. Comp. ¶¶ 73–74.[6] The APA "imposes a general but nondiscretionary duty upon an administrative

---

[4] *See, e.g.*, U.S. Dep't of State, Bureau of Consular Affairs, *National Interest Exceptions for Certain Travelers* (May 27, 2021), https://travel.state.gov/content/travel/en/News/visas-news/national-interest-exceptions-for-certain-travelers-from-china-Iran-india-brazil-south-africa-schengen-area-united-kingdom-and-ireland.html (determining that the entry of students, journalists, and other non-immigrants falls under the national interest exception).

[5] Although Plaintiffs do not advance this argument and the parties have not briefed it, this claim is not saved because some portion of the ongoing delay in processing Plaintiffs' applications may be attributable to the lingering effects of Defendants' previous application of the Proclamation to suspend the processing of *others'* visa applications. That is not the kind of tangible, concrete effect, traceable to Plaintiffs' own injuries, and curable by the relief they demand, which has marked those instances when the D.C. Circuit has found that the effects of an alleged injury have not been eradicated by voluntary cessation. *See Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991).

[6] Some courts in this District "have declined to evaluate claims of 'unreasonable delay' before discovery, noting that doing so would be 'premature' because the inquiry is 'fact intensive.'" *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *4 (D.D.C. Mar. 22, 2021) (quoting *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020)). But it is not uncommon for courts here to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6) motion. *Id.* at *5 (collecting cases); *see also Palakuru v. Renaud*, No. 20-cv-2065 (TNM), 2021 WL 674162, at *3 (D.D.C. Feb. 22, 2021) (observing that "the weight of authority appears to cut" in favor of deciding "unreasonable-delay claims at the motion-to-dismiss stage before discovery"). After all, at this stage, "the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Palakuru*, 2021 WL 674162, at *3 (quoting *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-0397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020)). Plaintiffs have not objected to the timing of Defendants' motion to dismiss. ECF No. 26 at 6–8.

agency to pass upon a matter presented to it 'within a reasonable time,' and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Palakuru v. Renaud*, No. 20-cv-2065 (TNM), 2021 WL 674162, at *2 (D.D.C. Feb. 22, 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003)). To determine whether an agency has unreasonably delayed agency action under the APA, courts apply the six-factor test the D.C. Circuit established in *Telecomms. Research & Action Ctr. v. F.C.C.* (*TRAC*), 750 F.2d 70 (D.C. Cir. 1984). Under *TRAC*, courts must consider the following factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 79–80 (cleaned up).

The first factor is the most important, *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), though courts "typically consider [the first and second factors] together, *Milligan v. Pompeo*, No. 20-cv-2631 (JEB), 2020 WL 6799156, at *8 (D.D.C. Nov. 19, 2020). The first factor favors Defendants. "Whether the State Department has a 'rule of reason' 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency

11

inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Id*. (quoting *Mashpee*, 336 F.3d at 1102). Defendants must show an "identifiable rationale" governing their decisions. *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Defendants have shown such an identifiable rationale in how they have adjusted visa processing during the COVID-19 pandemic. As the State Department acknowledged just a few months ago, the pandemic "continues to severely affect the ability of embassies and consulates around the world to be able to resume routine visa services. The particular constraints vary based on local conditions and restrictions, but include local and national lockdowns; travel restrictions; host country quarantine regulations; and measures taken by our embassies and consulates to contain the spread of COVID-19."[7] Thus, in March 2020, the Secretary of State "suspended all routine visa services, providing only "emergency" and "mission critical" services. Am. Compl. ¶¶ 10, 58. A few months later, in July 2020, the State Department began to phase back in additional services, including visa services. Am. Compl. ¶ 10. And even if that ended up meaning, as Plaintiffs allege, that no EB-5 visa application was processed by U.S. consulates in China for the next eight months as the COVID-19 pandemic spread, in April 2021, the State Department outlined a rational scheme to prioritize certain visa applications, including EB-5 applications. *See* U.S. Dep't of State, Bureau of Consular Affairs, *Immigrant Visa Prioritization* (Apr. 30, 2021). "The guiding principle on which [the State Department has] based immigrant visa prioritization is that family reunification is a clear priority of the U.S. Government's

---

[7] *See* U.S. Dep't of State, Bureau of Consular Affairs, *Visa Services Operating Status Update* (April 6, 2021), https://travel.state.gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html.

immigration policy, a priority is expressed in the Immigration and Nationality Act (INA). Specifically, the Department's prioritization relie[s] on clear direction from Congress that the Department must adopt a policy of prioritizing immediate relative visa applicants and K-1 fiancées of U.S. citizens, followed by family preference immigrant visa applicants." *Id.* Admittedly, this scheme is not that favorable for Plaintiffs, as it places them in the fourth and final tier of priorities. Still, Defendants' approach is supported by a clear rule of reason.[8]

On the other hand, the second factor—which asks whether Congress has supplied content for an agency's rule of reason—favors Plaintiffs. Congress did statutorily express its "sense" that the "processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). But as another court in this District recently recognized, "the prefatory 'sense of congress' language in § 1571(b) is best interpreted as nonbinding," *Palakuru*, 2021 WL 674162, at *4, because "a sense of Congress resolution is not law" under Circuit precedent. *Id.* (quoting *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008)). All the same, the language—passed by both houses of Congress and approved by the President—is surely "an indication of what the legislature had in mind—after all, Congress had the option of saying nothing on the subject at all." *Uranga v. U.S. Citizenship & Immigration Servs.*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020). Even so, the same statute "expressly recognizes 'the current backlog' in

---

[8] Although Plaintiffs briefing is not clear on this point, they may argue that because Defendants' interpretation of the Proclamation resulted in the unlawful suspension of visa processing, any delay attributable to the Proclamation was not governed by a rule of reason. But even if Defendants' application of the Proclamation was incorrect, given the unique circumstances presented by the COVID-19 pandemic and the modest delay here, the Court would still find that the first two factors weigh in favor of Defendants. Moreover, even if the Court counted them on Plaintiffs' side of ledger, the Court's conclusion that Plaintiffs have not stated a claim for unreasonable delay would not change due to the outsized importance of the fourth factor.

13

processing visa applications," *Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021), which lessens the persuasive force of Plaintiffs' argument. *See id.* (holding that § 1571 does not provide a "Congressional timeline to apply."). The Court agrees that the timeline provided by § 1571 is "aspirational, rather than mandatory," *id.*, and weighs it accordingly.

Weighing the two factors cumulatively though, the Court finds that they favor Defendants. Although Congress did express an aspirational timeline of 180 days to complete visa processing, it could hardly have accounted for a worldwide pandemic. Under the circumstances, the delays here so far are relatively modest, when measured against Congress's goal. The earliest that any of Plaintiffs' applications was "documentarily complete" was December 2019, and most Plaintiffs did not become eligible for an interview until March 2020 or later. Then that month, the State Department, like other parts of the United States Government, had to "take appropriate steps to prioritize all resources to slow the transmission of COVID-19, while ensuring [its] mission-critical activities continue."[9] And now, Defendants are operating under a clear set of rules to prioritize processing the backlog of visa applications. Notably, Plaintiffs have cited no instance in which a court found that the State Department unreasonably delayed the processing of visa applications based on a similar length of delay.

"The third and fifth factors are often considered together, and require the Court to consider Plaintiffs' interests, health, and welfare," and the prejudice to those interests from delay. *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021) (citation omitted). Plaintiffs present different sets of concerns related to delay. A few are

---

[9] *See* Director, Office of Mgmt. and Budget, *Federal Agency Operational Alignment to Slow the Spread of Coronavirus COVID-19* (Mar. 17, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M-20-16.pdf.

experiencing family separation because of the delay, and others are paying higher international student tuition for their children to study in the United States. *See, e.g.*, Am. Compl. ¶ 26. But beyond these interests, Plaintiffs mostly assert a laundry list of vague and unclear claims. *See, e.g.*, Am. Compl. ¶ 49 ("[Plaintiff] is very worried about the safety of his investment and uncertainties of his career and future"); Am. Compl. ¶ 44 ("She is very stressed about the safety of her investment and uncertainties of her career and child's education"); Am. Compl. ¶ 31 ("He is frustrated about his child's age out issue, child's education and risks to his EB-5 investment."). Thus, the effect of the third and fifth factors varies as to each Plaintiff. For those who have clearly alleged that the delay has caused them to be separated from family members, these health and welfare interests weigh more heavily in their favor. Am. Compl. ¶¶ 16, 30, 33, 34, 43, 47; *see also Zandieh v. Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *5 (D.D.C. July 29, 2020) (third factor favored plaintiffs due to harm from family separation); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (same). To the extent that other Plaintiffs have adequately plead other relevant interests, these factors also favor them, although less decisively than if their health and welfare were at stake. *Gona v. USCIS*, 20-cv-3680, 2021 WL 736810, at *4 (D.D.C. Feb. 25, 2021). As for those Plaintiffs who make only vague and conclusory claims, though, these factors are neutral and do not support their claims of unreasonable delay. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.") (cleaned up).

       The fourth factor requires a court to account for the effects of expedited action on "agency activities of equal or greater priority." *Ghadami*, 2020 WL 1308376, at *9. This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable

delay. The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee*, 336 F.3d at 1100 (cleaned up). Ordering Defendants to immediately schedule visa interviews for Plaintiffs and adjudicate their visas is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017). And "[a]ny such order would plainly interfere with the agency's 'unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021) (quoting *In re Barr Labs, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)).

This precedent applies even more powerfully here than in the typical case presenting claims of unreasonable delay. That is so because of the challenges presented by the COVID-19 pandemic, which has created unusual and extreme challenges for Defendants, on top of the typical bureaucratic hold ups.[10] Defendants, not this Court, are best positioned to understand the continued effect of the pandemic on their operations, the entire backlog of visa applications, the competing demands on involved personnel, and even how (if at all) to account for the impending deadline for Congress to reauthorize the EB-5 Regional Center Program. Thus, Defendants, not this Court, know best how to allocate their resources and prioritize the processing of visa applications. And notably, Defendants have made progress in addressing the backlog even since the filing of this lawsuit, as reflected by its processing of the visa applications of six original plaintiffs.

---

[10] *See* Director, Office of Mgmt. and Budget, *Federal Agency Operational Alignment to Slow the Spread of Coronavirus COVID-19* (Mar. 17, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/M-20-16.pdf.

Seeking to overcome this authority, Plaintiffs argue that their situation merits special consideration. They style themselves as whistleblowers "brave" enough to challenge Defendants' application of the Proclamation and reason that without their actions, it "would not matter where" other applicants were in the queue "since the queue itself is not moving."[11] ECF No. 26 at 17–18. They suggest that requiring them to remain in their present "spots" in line would thus be a form of retaliation. *Id.* at 18. But Plaintiffs' protestations do not change the fact that moving them to the front of the line would produce no net gain and merely reward them at the expense of others. *See Verma v. USCIS*, 20-cv-3419, 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020) ("To grant Plaintiff priority would push those individuals further back in line when the only difference between them is that plaintiff has brought a federal lawsuit."); *Dmitrenko v. Chertoff*, No. 07-cv-0082, 2007 WL 1303009, at *1 (E.D. Va. Apr. 30, 2007) ("[T]o grant relief in this case would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer.").

As to the sixth factor, Plaintiffs do not plausibly allege that "the agency has acted in bad faith in delaying action." *Gona v. USCIS*, 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021). Plaintiffs characterize Defendants' conduct as "injurious, abusive, erroneous interpretations and practices" and claim that Defendants "cavalierly risk [Plaintiffs'] hard earned capital and their families' futures, through whim, caprice and gross negligence." Am. Compl.

---

[11] Plaintiffs also note that they are all Chinese nationals who "live in a culture disfavoring litigation and in a country where ordinary citizens fear[] powerful governments." ECF No. 26 at 17. But this argument does not support any change to their place in the visa "queue" at U.S. Consulate General Guangzhou. Even if these cultural considerations mattered in the Court's analysis (and they do not), nothing suggests that this distinguishes them from others with visa applications pending in China.

¶ 64.  But Plaintiffs allege nothing more specific.  The Court finds that Plaintiffs' allegations on this point lack "factual content that allows the court to draw the reasonable inference" of any bad faith or impropriety that would sway this factor in Plaintiffs' favor.  *Iqbal*, 556 U.S. at 678.  As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiffs, and therefore does not alter the Court's analysis.  *See Palakuru*, 2021 WL 674162, at *6.  The Court also notes that, as much as Plaintiffs allege that Defendants engaged in bad faith merely by interpreting the Proclamation to allow it to suspend processing of their visa applications in the past, the Court is unpersuaded.  True, several district courts have ruled against Defendants' interpretation of the Proclamation, although only at the preliminary injunction stage. *See Tate v. Pompeo*, 20-cv-3249, 2021 WL 148394, at *9 (D.D.C. Jan. 16, 2021) (appeal filed Mar. 22, 2021); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 315 (D.D.C. 2020); *Gomez v. Trump*, 485 F. Supp. 3d 145, 176 (D.D.C. 2020).  But those rulings did not bind Defendants concerning the application of the Proclamation to Plaintiffs.  And a good-faith legal disagreement such as that one—especially given the effect of the COVID-19 pandemic and the State Department's "historical practice of refusing visas to applicants subject to a presidential proclamation barring entry," *Tate*, 2021 WL 148394, at *8—is hardly an impropriety that the Court would weigh in Plaintiffs' favor under this factor.

After weighing all six factors, the Court ultimately concludes that Plaintiffs fail to state a claim of unreasonable delay under the APA.  The Court sympathizes with Plaintiffs' predicament and acknowledges that this is undoubtedly a frustrating result for them.  But at least for now, resolving the tension between reasonable health and safety precautions required during the COVID-19 pandemic, limited resources for processing clearing the backlog of visa applications, the interests of Plaintiffs and others in the visa application queue, and even the Regional Center

Program's possible expiration, "is a problem for the political branches to work out." *In re Barr*, 930 F.2d at 75.

**IV.     Conclusion**

For all these reasons, the Court will grant Defendants' motion to dismiss and deny Plaintiffs' motion for a preliminary injunction because they have failed to show a likelihood of success on the merits. *See CREW,* 387 F. Supp. 3d at 44.  A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: June 18, 2021